Curia, per Withers, J.
The first ground of appeal appears to proceed upon a misapprehension in regard to the exclusion of the-testimony offered through Mr. Maxwell. We learn from the report, that what that witness would have said as to the character of the plaintiff, had been derived, by letter, from persons residing in Hamburg, with whom'a correspondence had been instituted, since the commencement of this action, at the instance of the defendant. There is no room to doubt that such evidence was inadmissible. It is familiar doctrine, that since evidence of reputation partakes of the weakness of hearsay report, its force depends mainly upon the absence of all temptation to misrepresent the facts, and therefore declarations, even as to pedigree, made post litem motam, are inadmissible.
The law is solicitous to open to the jury every legitimate avenue to truth; it secures cross-examination — it compels the attendance of witnesses, except in cases, provided by itself, arising from necessity or great inconvenience — it compels the fullest disclosure, except in a very few instances, where the highest policy and the tenderest relations impose and sanction silence. But the law seeks, also,‘to.send its intelligence to the jury from sources uncorrupt and free from the perversion of oblique forces. Hence it demands, where character is the issue, that public opinion or the general belief, shall indicate that character — a public opinion, or a general belief, existing and matured ante litem motam — a public opinion, (to use the words of Kenyon, C. J. in Foulhes v. Sellway, founded on the conduct of the party.” Since the law presumes that every one, informed of the controversy, has taken a side, at least since the action has been commenced, the public opinion that grows up under such bias is excluded. Since the testimony of Mr. Maxwell was liable to such objection, not to dwell upon the manner in which his information was derived, being by letters written under no responsibility, without cross-examination, by those whose depositions might have been obtained in regular form — this Court is quite satisfied that there was no error in excluding such evidence.
The jury were instructed that if the defendant broke his *46 contract on account of reports, resting on a good foundation, t injurious to the plaintiff’s character, and unknown to him when he entered into the engagement, the damages should be very small. Exception is taken to this proposition.
Suppose the qualification suggested (that the reports should rest “on a good foundation”) had been omitted ; then the jury would have been told, in effect, that the defendant shoulá respond in very small damages if he had heard any injurious reports at all. It is obvious that this would have dono injustice to the plaintiff In such pase her rights, sensibilities, fate in life, would have been left to the sport of idle or malicious calumny- — of that breath of envy that is but too ready to tarnish the brightest surface — that the craft of a whimsical arid unscrupulous defendant might easily contrive the means of his own defence. If such a defence as was set up in this case be permitted to have any effect at all, the rumors upon which it proceeded ought to have been shown to rest upon something proved in the life or conversation of the plaintiff, that would constitute a reasonable foundation for the belief or apprehension of the defendant, that the woman he had promised to marry was impure. The charge on the Circuit was intended to hold him to this rule, and we do not perceive that it conflicts with law or propriety. The defendant was allowed an ample range, to shew what were the rumors that reached his ears, and from what source. He was not restricted in the opportunity to shew the demeanor of the plaintiff. It is necessarily to be inferred that the jury concluded the foundation of the defence was pretensive, altogether, or if the defendant did act on any belief or apprehension, this was merely gratuitous, and had no reasonable ground to support it. What the defendant in fact believed it is impossible to know. But what ought not reasonably to be believed from the mouth of rumor, should not have availed him. This is saying no more than that if he acted upon rumor, he should have been held to shew, in mitigation of damages, not the truth of the rumor, but a reasonable, or “ a good foundation,” for it. Unless we hold such doctrine every executory contract of marriage may be evaded. As to a justification of the breach of such a contract, we see no objection to the proposition announced by Abbot, C, J. in Irving v. Greenwood, to wit, “ If one has been paying his addresses to a woman that he supposes to be a modest person, and afterwards discover her to be loose and immodest, he is justified in breaking any promise of marriage he may have made to her; but to entitle a defendant to a verdict on that ground, the jury must be satisfied that the plaintiff was a loose and immodest woman, and that the defendant broke his promise on that account, and also that the defendant did not know her character at the time of the promise.” As to excessive damages, how shall we interfere ? The defen *47 dant gave the jury no means to determine, and of course we can have none, as to his pecuniary condition. He rested upon the facts he thought proper to adduce; and if it becomes this Court ever to supervise the jury, acting in their peculiar province, this case does not furnish the proper instance.
The motion is dismissed.
The whole Court concurred.

Motion refused.